UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| HAMILTON SUNDSTRAND CORPORATION and RATIER-FIGEAC SAS, | **COMPLAINT** |
| Plaintiffs, | CIVIL ACTION NO. 1:19-CV-6472 |
| -against- | |
| AIRCRAFT PROPELLER SERVICE, LLC, | |
| Defendant. | |

Plaintiffs Hamilton Sundstrand Corporation ("Hamilton") and Ratier-Figeac SAS ("Ratier") hereby bring this Complaint against Defendant Aircraft Propeller Service, LLC ("APS").

## THE PARTIES

1. Hamilton is a Delaware corporation with a principal place of business in Connecticut. Hamilton designs, manufactures and services systems and components for commercial and military aircraft. Among many other things, Hamilton manufactures and services propellers and related parts and systems for turboprop-powered aircraft. Hamilton is a direct subsidiary of United Technologies Corporation.

2. Ratier is foreign corporation incorporated under the laws of France with a principal place of business in France. Ratier designs, manufactures and services systems and components for aircraft, including aircraft propellers. Ratier is an indirect subsidiary of United Technologies Corporation.

-2-

3. APS is a Delaware limited liability company with a principal place of business in Illinois. APS services, maintains and repairs turboprop aircraft propellers. None of APS's members is a citizen of Delaware, Connecticut or France.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties and the amount in controversy, exclusive of interest and costs, exceeds $75,000.

5. This Court has personal jurisdiction over APS because APS consented to jurisdiction in this Court in Section VIII(E) of each of the agreements described in Paragraphs 8-12, below.

6. Venue is appropriate in this District because APS consented to venue in this District in Section VIII(E) of each of the agreements described in Paragraphs 8-12, below.

## FACTUAL BACKGROUND

7. Hamilton and Ratier (together, "HSC") jointly entered into two non-exclusive license agreements with APS under which HSC agreed to sell APS certain parts and authorized APS to perform certain proprietary repairs for operations in the Americas region, which refer to as "IATA 1" and Asia region, which the parties refer to as "IATA 3."

8. The agreement governing IATA 1 is entitled "Amended and Restated Consolidated Technical Assistance, Repair Licensing and Spare Parts Purchase Agreement for Regional Propeller Systems in the IATA 1 Region" and is dated March 25, 2015 (the "IATA 1 License Agreement").

9. The IATA 1 License Agreement was amended by Amendment #1 to the IATA 1 Agreement (the "IATA 1 Amendment").  Together the IATA 1 License Agreement and the IATA 1 Amendment are referred to as the "IATA 1 Agreement").

10. The agreement governing IATA 3 is entitled "Technical Assistance, Repair Licensing and Spare Parts Purchase Agreement for Regional Propeller Systems in the IATA 3 Region" and is dated March 17, 2015 (the "IATA 3 License Agreement").

11. The IATA 3 License Agreement was amended by Amendment #1 to the IATA 3 Agreement (the "IATA 1 Amendment").  Together the IATA 3 License Agreement and the IATA 3 Amendment are referred to as the "IATA 3 Agreement").

12. The IATA 1 Agreement and the IATA 3 Agreement are referred to, together, as the "Agreements."

13. Under the Agreements, APS must pay HSC license fees in installments as consideration for APS's having the right to perform certain proprietary repairs in the two regions the Agreements cover.  The Agreements provide that APS must pay an interest charge at a rate of 6% per year for all license fees that are not timely paid ("Contractual Interest").  Interest begins to apply on the license fee's due date and terminates on the date APS pays the fee.

14. Under the Agreements, APS may purchase spare parts from HSC, but APS may only resell such spare parts under conditions the Agreements expressly specify, including the conditions that:  APS must obtain HSC's prior approval for all such sales; APS must provide HSC prior notice of any such sale, which notice must identify the customer and the spare parts to be sold; and that APS must separately warrant the parts.

15. Under the Agreements, APS must exclusively purchase from HSC parts called "line replaceable units" and "piece-parts" (together, the "Exclusive Parts") that APS uses in its overhaul, maintenance and proprietary repair work.

16. The Agreements provide that HSC may recover its attorneys' fees and court costs associated with proceedings to enforce the Agreements. This is such a proceeding.

17. HSC has performed all of its obligations under the Agreements.

## COUNT ONE
### Breach of the IATA 1 Agreement (License Fees)

18. HSC re-alleges paragraphs 1 - 17 as if set forth fully herein.

19. Despite HSC's repeated demands, APS has failed and refused to make certain license fee payments that are required under the IATA 1 Agreement.

20. APS's failure to make such payments constitutes a material breach of the IATA 1 Agreement.

21. HSC has been damaged by APS's breach of the IATA 1 Agreement.

22. HSC is entitled to recover all unpaid license fee payments under the IATA 1 Agreement, other damages, Contractual Interest, attorneys' fees and costs.

## COUNT TWO
### Breach of the IATA 1 Agreement (Reselling Spare Parts)

23. HSC re-alleges paragraphs 1 - 17 as if set forth fully herein.

24. APS has sold and continues to sell spare parts APS purchased from HSC under the IATA 1 Agreement without complying with the conditions for such sales.

25. Such sales constitute a material breach of the IATA 1 Agreement.

26. HSC has been damaged by APS's breach of the IATA 1 Agreement.

27. HSC is entitled to damages, attorneys' fees and costs.

## COUNT THREE
**Breach of the IATA 1 Agreement (Exclusive Parts)**

28. HSC re-alleges paragraphs 1 - 17 as if set forth fully herein.

29. APS has purchased and continues to purchase Exclusive Parts from parties other than HSC.

30. Such purchases constitute a material breach of the IATA 1 Agreement.

31. HSC has been damaged by APS's breach of the IATA 1 Agreement.

32. HSC is entitled to damages, attorneys' fees and costs.

## COUNT FOUR
**Breach of the IATA 3 Agreement (License Fees)**

33. HSC re-alleges paragraphs 1 - 17 as if set forth fully herein.

34. Despite HSC's repeated demands, APS has failed and refused to make certain license fee payments that are required under the IATA 3 Agreement.

35. APS's failure to make such payments constitutes a material breach of the IATA 3 Agreement.

36. HSC has been damaged by APS's breach of the IATA 3 Agreement.

37. HSC is entitled to recover all unpaid license fee payments under the IATA 3 Agreement, other damages, Contractual Interest, attorneys' fees and costs.

## COUNT FIVE
**Breach of the IATA 3 Agreement (Reselling Spare Parts)**

38. HSC re-alleges paragraphs 1 - 17 as if set forth fully herein.

39. APS has sold and continues to sell spare parts APS purchased from HSC under the IATA 3 Agreement without complying with the conditions for such sales..

40. Such sales constitute a material breach of the IATA 3 Agreement.

41. HSC has been damaged by APS's breach of the IATA 3 Agreement.

42. HSC is entitled to damages, attorneys' fees and costs.

### COUNT SIX
### Breach of the IATA 3 Agreement (Exclusive Parts)

43. HSC re-alleges paragraphs 1 - 17 as if set forth fully herein.

44. APS has purchased and continues to purchase Exclusive Parts from parties other than HSC.

45. Such purchases constitute a material breach of the IATA 3 Agreement.

46. HSC has been damaged by APS's breach of the IATA 3 Agreement.

47. HSC is entitled to damages, attorneys' fees and costs.

### COUNT SEVEN
### Declaratory Judgment for Future License Fee Payments Under the IATA 1 Agreement

48. HSC re-alleges paragraphs 18 - 22 as if set forth fully herein.

49. HSC is entitled to a declaration that APS must make all future license fee payments as and when they become due under the terms of the IATA 1 Agreement.

### COUNT EIGHT
### Declaratory Judgment for Future License Fee Payments Under the IATA 3 Agreement

50. HSC re-alleges paragraphs 33 - 37 as if set forth fully herein.

51. HSC is entitled to a declaration that APS must make all future license fee payments as and when they become due under the terms of the IATA 3 Agreement.

### COUNT NINE
### Declaratory Judgment for Future Spare Parts Sales Under the IATA 1 Agreement

52. HSC re-alleges paragraphs 23 - 27 as if set forth fully herein.

53. HSC is entitled to a declaration that APS may not sell spare parts without complying, in full, with the IATA 1 Agreement's conditions governing spare parts sales.

### COUNT TEN
### Declaratory Judgment for Future Spare Parts Sales Under the IATA 3 Agreement

54. HSC re-alleges paragraphs 38 - 42 as if set forth fully herein.

55. HSC is entitled to a declaration that APS may not sell spare parts without complying, in full, with the IATA 3 Agreement's conditions governing spare parts sales.

### COUNT ELEVEN
### Declaratory Judgment for Future Exclusive Parts Purchases Under the IATA 1 Agreement

56. HSC re-alleges paragraphs 28 - 32 as if set forth fully herein.

57. HSC is entitled to a declaration that APS must purchase Exclusive Parts only from HSC.

### COUNT TWELVE
### Declaratory Judgment for Future Exclusive Parts Purchases Under the IATA 3 Agreement

58. HSC re-alleges paragraphs 43 - 47 as if set forth fully herein.

59. HSC is entitled to a declaration that APS must purchase Exclusive Parts only from HSC.

### PRAYER FOR RELIEF

WHEREFORE, HSC hereby demands the following relief against APS:

1. On HSC's breach of contract claims for APS's failure to pay license fees: all outstanding unpaid license fees; Contractual Interest, monetary damages and interest;

2. On HSC's breach of contract claims for APS's selling spare parts in violation of the Agreements: monetary damages;

3. On HSC's breach of contract claims for APS's purchasing Exclusive Parts in violation of the Agreements: monetary damages;

4. On HSC's declaratory judgment claims:

    a. a declaration that APS must make all future license fee payments as and when they become due under the terms of the IATA 1 Agreement and IATA 3 Agreement;

    b. a declaration that APS may not sell spare parts without complying, in full, with the conditions governing spare parts sales in the IATA 1 Agreement and IATA 3 Agreement;

    c. a declaration that APS must purchase Exclusive Parts only from HSC.

5. On all claims pled in Counts One through Six, pre-judgment and post-judgment interest;

6. On all the claims, attorneys' fees and costs; and

7. Such other relief as this Court may deem just and proper.

Dated:  July 12, 2019

PLAINTIFFS, Hamilton Sundstrand Corporation and Ratier-Figeac SAS

By: /s/ Matthew J. Shiroma
    Matthew J. Shiroma   MS4294
    DAY PITNEY LLP
    242 Trumbull Street
    Hartford, CT  06103-1212
    Phone: (860) 275-0100
    Fax: (860) 275-0343
    Email: mshiroma@daypitney.com

    Mitchell R. Harris
    DAY PITNEY LLP
    242 Trumbull Street
    Hartford, CT 06103
    Phone: (860) 275-0100
    Fax: (860) 275-0343
    Email:mrharris@daypitney.com
    *Application for admission to be submitted*