Case 1:19-cv-06472-RA Document 45 Filed 06/20/20 Page 1 of 4

# DAVIS GRAHAM & STUBBS

Thomas C. Bell
303 892 7472
tom.bell@dgslaw.com

June 8, 2020
**FILED ON ECF**

The Honorable Ronnie Abrams
United States District Judge
Thurgood Marshall United States Courthouse
40 Foley Square
New York, New York 10007

> Re: *Hamilton Sundstrand Corporation, et al. v. Aircraft Propeller Service, LLC*,
> No. 19-CV-6472 (RA)—Request for Informal Discovery Dispute Conference

Dear Judge Abrams:

We represent Defendant Aircraft Propeller Service, LLC ("APS") in the above-captioned lawsuit. Pursuant to the "Individual Rules & Practices in Civil Cases, Ronnie Abrams, United States District Judge", dated February 6, 2020, ¶ 3, we are writing to request an informal conference with the Court to resolve a discovery dispute. We have conferred extensively in writing and by phone with opposing counsel and we were unable to resolve the issues addressed herein.

## FACTUAL BACKGROUND[1]

This case arises from Plaintiffs' fraudulent inducement of Defendant to enter licensing agreements and Plaintiffs' breach of those agreements. The licensing agreements between the Parties gave Defendant the right to perform maintenance, repair, and overhaul ("MRO") services for aircraft propeller blades for which Plaintiffs are the original equipment manufacturer ("OEM"). The licensing agreements covered several propeller systems, including, most importantly, the 568F blade type.

Prior to the licensing agreements, only Plaintiffs could perform proprietary MRO services for 568F blades. Plaintiffs induced Defendant to enter the licensing agreements by representing that the proprietary MRO work Plaintiffs had performed up to that point would transition to Defendant. Plaintiffs insisted that Defendant pay over $40 million in licensing fees, with most due in the agreements' first year. The Parties understood Defendant would pay these licensing fees using the revenue from MRO work transitioned to Defendant from Plaintiffs; both Parties even calculated those licensing fees based on that revenue stream.

Plaintiffs have not honored the licensing agreements and the inducements they made to Defendant. Instead, Plaintiffs have continued performing the proprietary MRO work that was supposed to transition to Defendant. Plaintiffs have thereby achieved a double dip – collecting tens of millions in licensing fees from Defendant while simultaneously earning revenue from the end-users of proprietary MRO services who were supposed to have transitioned to Defendant. Faced with Plaintiffs' misconduct,

---

[1] This background is intended to give the Court information to understand the instant disputes. It does not comprehensively summarize all Plaintiffs' misconduct or the counterclaims arising therefrom.

4733454

and lacking the revenue stream which the Parties had agreed would fund the fixed licensing fees payable to Plaintiffs, Defendant had no choice but to stop paying those fees and to counterclaim when Plaintiffs brought suit.

## FIRST ISSUE – Depositions

On May 18, 2020, we requested availability for the depositions of four HSC affiliated witnesses whom we asked to depose in a specific order.  HSC's counsel initially did not respond and, after repeated follow-up emails in which he asserted that APS's request was not "urgent," first provided one witness's availability on June 2.  HSC's counsel still has not provided availability for one of the four witnesses and, as of June 5, reported that he could not even say with certainty whether he represented that witness for purposes of deposition.  HSC's counsel also reported not having contact information for that witness.  For the three other witnesses, HSC's counsel provided one day of availability each for two witnesses, and two half-days of availability for the third witness, the combination of which did not allow for APS's requested order of depositions.  HSC's counsel refused APS's requests to know if the witnesses have availability that would allow them to be deposed in the order APS requested.  APS seeks an order from the Court that HSC provide complete availability for the witnesses whose depositions APS has requested so that APS may depose them in the order requested (subject to their availability), and that counsel immediately provide contact information for any witness he does not represent.

## SECOND ISSUE – Document Requests Regarding 568F Parts

Defendant interposed the following document requests to Plaintiffs which Plaintiffs answered with the corresponding objections.

REQUEST FOR PRODUCTION NO. 14: Please produce all agreements, contracts, purchase orders, invoices and correspondence with, to or from HSC [defined as including Ratier] and any distributors or resellers (including ATR) of 568F LRU parts licensed in the IATA 1 Region and / or the IATA 3 Region during the Time Period.

OBJECTION: HSC object to this Request as overly broad, unduly burdensome, and disproportionate to the needs of this case because it seeks irrelevant information.

REQUEST FOR PRODUCTION NO. 15: Please produce all documents concerning any commercial policy for blades being scrapped for, among other reasons, corrosion (bearing races, trunnion radius, tulip flange, pin holes) or scrapped due to bumspot that relate to 568F propeller blades during the Time Period.

OBJECTION: HSC object to this Request as overly broad, unduly burdensome, and disproportionate to the needs of this case because it seeks irrelevant information.

Plaintiffs' objections are boilerplate and fail to meet Rule 34's requirement that objections "state with specificity the grounds for objecting to the request."  Fed. R. Civ. P. 34(b)(2)(B).

Plaintiffs also are wrong that the requests seek irrelevant information.  Plaintiffs intend to defend the counterclaims by arguing that end-users of MRO services insisted on using the OEM's services rather than Defendant's.  Plaintiffs claim they therefore cannot be responsible for failing to transition those end-users to Defendant.  Plaintiffs' pricing of OEM parts will reveal whether Plaintiffs' argument

is true or if, instead, Plaintiffs manipulated OEM parts prices and scrapping policies so as to oust Defendant's services from the MRO marketplace.

Like a car manufacturer, as the OEM, Plaintiffs are the only makers of OEM parts needed to carry out MRO work for 568F blades. The sale of OEM parts alongside MRO services makes up a significant percentage of the total price charged to consumers of MRO services. The price Defendant must pay Plaintiffs for those parts is critical to Defendant's ability to generate income to pay the fixed fees Plaintiffs required for the licenses.

Plaintiffs' documents related to scrapping 568F propeller blades are relevant for similar reasons. Plaintiffs changed their policy related to scrapping propeller blades after executing the licensing agreements by encouraging end-users to scrap blades earlier rather than later in the repair cycle. When a blade is required to be scrapped based on the OEM's guidance, an entirely new blade must be purchased, obviating the need for the MRO services that Defendant would provide. Here again, the documents requested from Plaintiffs will reveal whether they exercised their power over 568F parts to steer 568F propeller end-users away from Defendant's MRO work.

### THIRD ISSUE – Document Requests Regarding HSC Revenues

Defendant interposed the following document request to Plaintiffs, which Plaintiff answered with the corresponding objection:

REQUEST FOR PRODUCTION NO. 16: Please produce all documents concerning HSC revenues relating to 568F overhauls and repairs originating from the IATA I Region and the IATA 3 Region during the Time Period, including any summaries by month, quarter, year and other periods.

OBJECTION: HSC object to this Request as overly broad, unduly burdensome, and disproportionate to the needs of this case because it seeks irrelevant information. HSC further object to the extent it seeks proprietary or trade secret information.

Again, Plaintiffs' overbreadth objection fails for lack of specificity. And its proprietary objection also fails because the Parties have a dual-level protective order in place that would prevent Defendant's principals from seeing any information Plaintiffs designated as highly confidential.

Plaintiffs' relevance objection fails as well. The magnitude of Plaintiffs' revenues associated with 568F MRO work will demonstrate Plaintiffs' significant incentive to breach the licensing agreements and, in particular, Ratier's principals' incentive to breach the licensing agreements and to maintain revenue from 568F MRO work on the profit and loss statements for which they are responsible. Those revenues also will demonstrate the reasonableness of Defendant relying on Plaintiffs' pre-contract projections about the revenue Defendant would achieve. For similar reasons, evidence about the revenues Plaintiffs achieved when performing work that should have gone to Defendant also will support the reasonableness of Defendant's damages calculations. Finally, Plaintiffs' revenue on the work they wrongly kept from Defendant unquestionably is relevant to Defendant's counterclaim for unjust enrichment as Plaintiffs' revenues measure the extent of their unjust enrichment.

Thank you for your consideration. We look forward to addressing these issues with the Court through an informal discovery dispute conference.

Sincerely,

Thomas C. Bell
Partner
for
DAVIS GRAHAM & STUBBS LLP

cc:  Albert J. Givray, Esq. (counsel for Defendant)(via email)
Mitchell R. Harris, Esq. (counsel for Plaintiffs)(via email)
Matthew J. Shiroma, Esq. (counsel for Plaintiffs)(via email)

By separate order, the Court refers this action to Magistrate Judge Wang
to resolve the present discovery dispute, as well as any other general pretrial
matters.

SO ORDERED.

_____
Ronnie Abrams, U.S.D.J.
June 10, 2020